The next case on our calendar for argument this morning is McAllister v. United States, No. 19-2514. We have Ms. Myers, who's appearing remotely. Good morning, Ms. Myers, and Mr. Sutcliffe, who is appearing here from the United States. Good morning, Your Honors. Ms. Myers, please proceed. You reserve two minutes to rebuttal. Yes, I did. First of all, I want to start out with two apologies, one of which is necessary and one of which may or may not be. When counsel for the government states that I had misquoted or I put something in the record at page 120-123, counsel, is it correct? I put one and one together and came out with three, so I apologize for that, both to counsel and to the court. The other apology may or may not be needed. The reason I'm appearing remotely is because, even though I'm in New York City, I am just getting over laryngitis, and I thought this would help somewhat, and so if you don't understand anything, please just speak up, or if my voice cracks, you'll see that I'm doing is sipping some water. Going to the argument, the certificate of appealability was granted by this court on the question of whether the court below incorrectly ruled that my client got ineffective, not my client, excuse me, that the defendant received ineffective assistance of counsel because he was not told of his right to appeal and there was no appeal taken. This case falls pretty clearly into a couple of categories. First of all, no one disputes that this is one of those cases in which either my client affirmatively instructed the it falls in that broader category of we simply don't know, so it is also undisputed that there was no consultation within the meaning of important law, which is consultation is you tell defendant as an attorney whether what the advantages or disadvantages you think of the defendant's views on taking an appeal are. Then I guess the preliminary question is to figure out whether counsel had a duty to consult, and our position is, Mr. McAllister's position is, that in fact counsel here had a duty to consult, did not do so, and for that reason the deficiency belowing, performing below an objective standard of reasonableness. Ms. Myers, could you point to any place in the record where Mr. McAllister suggested or his acts should be read as have suggesting to trial counsel a desire to appeal after his guilty plea was entered, but before the cases, he then pled guilty, then there's silence until his December 3rd letter, and the in that interim the deadline to appeal passed. So I'm looking for anything that I might have missed in the record. You did not miss anything in the record because there is in fact no direct reference to this. However, and we'll get and I'll get to this when we're talking about whether a hearing is necessary, as we do know from the record, and this is around page 160, that sometime after the plea, and we don't know exactly when it was because that is what is not stated exactly, defendant and counsel had discussed the implication of Townsend and and they had discussed pursuing the issue on further, and then specifically my client says we had a disagreement and defendant says that he specifically wrote, and this is correct, that just because his counsel thought that McAllister was wrong and that the specific argument that defendant wanted to promote was frivolous does not override his right to be consulted. I'm trying to figure out where that those conversations occurred because clearly there were such discussions before the plea was entered and Ms. McAllister knowingly waived his right to the third, but where do we have any indication that sometime after the plea, but not counting that letter, which is too late, that this issue was raised again? Well, we know it's after the plea because Townsend wasn't decided until August. The plea took place about a month and a half before that, and they are talking specifically, or my client is speaking specifically, about having had a discussion or a disagreement about Harbin and about Townsend, so it's pretty clear it came after the plea. What we don't know from the record is whether it also came within the period of, in which my client would have had any right to appeal, and we just don't know that from the record. It's not clear, but we do know there were continued discussions at which they were discussing his desire to take an appeal and knowing at that time that he knew that the court, that the attorney simply didn't just agree with him on the law, so that's how. But this issue did not surface at the sentencing either, did it? No, it did not. It surfaced in his habeas corpus memorandum of law, so that was that. But I think, I mean, here, I'm not sure that this is something that you would like me to speak about that I think it's necessary for me to speak about. In this case, the fact that he took the plea does not really in any way indicate that he was not ready, not willing to challenge the sentence at this point, because he takes a plea where he's sort of capped at 262 months for a sentence, but if he's correct that Townsend and Harbin applied to his case, he couldn't have been there for 72 months. So his plea does not show, as it does in many cases, that he had no particular desire in appealing, because... Well, he may have had a desire, he may have had some desire, but we're focused on the question of what his lawyer knew, and his lawyer knew that they had a discussion, and it would seem to me that he must have been he can have second thoughts, and he's still entitled to instruct the lawyer to enter an appeal, and he's still entitled to raise a question, and if he did, it might have put the lawyer on notice that further consultations were necessary. But as of the time of the plea, it's hard for me to see how someone who agrees and discusses with the court whether he's agreeing voluntarily and knowingly, and whether he's satisfied with what his lawyer has told him, and on and on, that he will not appeal any sentence less than 262 months, and he gets a sentence considerably less than 262 months, two years approximately less. As of the time of the guilty plea, I have trouble understanding how counsel could have been expected to anticipate the possibility of an appeal. Now, after that, all kinds of things could have happened, but I don't know, I guess the question that Judge Carney was asking is, where in the record do we see that the issue surfaces for the lawyer in that period? But you're saying, I take it your answer is that because the discussion is stated by Mr. McAllister to have concerned Townsend, it must have occurred sometime after the plea. After Townsend, yes, I mean that's correct, because there's no dispute as to when Townsend was decided. There's a dispute as to many, many other things. But why couldn't it have occurred after December 3rd? It could have. That is exactly why, if you're not willing to say, okay, your client is right, he will enter judgment, he'll get a right to have an appeal. If you are not willing to do that because of certain ambiguities in the record. But, I mean, it would seem to that your client has the ability to say what happened, as well as anyone else, but he never alleged anything, right? You're asking us to basically say, well, maybe there's something here we should remand to figure out if in fact a case could be made for this conversation happening before the plea or before the sentencing. Is that what you're asking us to do? I'm saying that there's enough not in the record at this point that occurred off the record, and we know that at least it occurred, you know, after early time, August 6th. There is not enough in this record to show when it was made, and in most of these cases, as the courts have said, there is a hearing of whatever type, not necessarily evidentiary given, and that is what should be done in this case to find out exactly what happened in this. Thank you, Ms. Myers. You have two minutes for rebuttal. We'll hear from the government. Thank you very much. Good morning. May it please the court, Thomas Sutcliffe on behalf of the United States. Good morning. The district court here correctly determined that Jeffrey McAllister failed to establish a claim for ineffective assistance of counsel, and therefore correctly denied his motion under Section 2255. At the outset, I think it's helpful to reiterate again the issues that are not in dispute here. McAllister is not challenging on appeal the district court's finding that he never expressly asked his attorney to file a notice of appeal. He also is not challenging on appeal, or at least in his counsel brief, the district court's determination that there were no non-frivolous issues that he could have pursued on appeal, such that a rational defendant in his position would have wanted to have done so. Nor has McAllister identified any issues that he could have raised that would have brought appellate waiver provision that was in his plea agreement. Mr. Sutcliffe, am I remembering correctly, and I might not be, that the issue of the merits of the merits here was raised to the motions panel, and the motions panel denied a significant appealability on that issue. Is that right? Your Honor, I believe that's correct. I don't remember all the issues that were raised in the motions panel, but I do recall that it was significantly broader than the issue that... So the only issue that's before us, it's not so much necessarily a question of were other issues waived by failure to raise, but the motions panel limited the certificate of appealability solely to the question that it granted the certificate on. That is correct, Your Honor. That being said, whether to appeal, the Supreme Court has recognized that the existence of non-frivolous issues could be relevant to that determination. But here, the district court correctly determined that there were no non-frivolous issues because of that appellate waiver provision. So the only issue is whether McAllister reasonably demonstrated to his attorney that he was interested in appealing it, and here he failed to prove that he ever did. When judgment in this case entered in August of 2018, Jeffrey McAllister's attorney, attorney Randy Bianco, did not have any objective reason to believe that he was dissatisfied with the outcome of the case. First, McAllister here pleaded guilty, and as the Supreme Court recognized in the Flores-Ortega decision, that itself is usually a good indication that a defendant is no longer interested in further litigating the case. In addition, he entered into a plea agreement that was in some respects favorable to him. McAllister was originally charged with, among other things, conspiring to distribute over a kilogram of heroin, but under the plea agreement, he was allowed to plead guilty to have only a conspiracy to distribute 100 grams or more, and there's no dispute here that that significantly reduced his mandatory term of imprisonment. At sentencing, he also received a term of imprisonment that was 22 months below the bottom of the guidelines range to which he did not object at sentencing, and he also, as I indicated before, entered into a plea agreement with an appellate waiver provision, and during the change of plea colloquy, the district court informed him that he was entering into that. Mr. Sutcliffe, the Flores-Ortega and Camposano, to me, I read them to reflect a quite broad obligation, important obligation on the part of a client to pursue an appeal even without potentially meritorious grounds or counsel disagrees on them. There's a broad duty, important duty to consult, kind of a fundamental duty to consult, and as I read these cases, it's even after a guilty plea is entered that one still needs to ask, even though a great deal may have been obtained through the plea negotiation process. And where there's ambiguity in the record over what later issued decision and what import that might have for the underlying conviction, why shouldn't the district court at least hold an evidentiary hearing to hear directly from counsel rather than to accept a very brief three or four minutes? McAllister's making a reasoned and detailed kind of argument about his preceding and kind of continuing debate with counsel about the import of Harbin and the later decided Townsend. Why wouldn't it be an abuse of discretion not to hold a hearing at least on that? Well, Your Honor, I think ultimately McAllister here bears the burden of proof as does any section 2255 movement, and here we're dealing with facts that were uniquely within his knowledge. These are conversations he had. These are conversations that obviously would have been very important to him. So there's no reason over the course of the extensive submissions that he gave to the district court that he could not have more clearly identified what those were. If he set forth an account of the facts that differed from what the government or from what Attorney Bianco did, I think that would be a different situation. I think there would be a much more compelling argument that the district court should have held an evidentiary hearing, but here where he's not even able to muster the sufficient allegations to make a culpable claim that he... He may not have been keeping a diary about when he spoke with Ms. Bianco, but clearly Townsend was bothering him. Harbin had been bothering him. As your opponent points out, Townsend was decided after the guilty plea was entered. Why wouldn't it be reasonable? And this had an important effect on the guidelines range that he was subject to. Wouldn't it be appropriate for the district court to hold a hearing in that circumstance? I don't think so, Your Honor, because again, admittedly, he may not have a detailed diary-like recollection of what occurred, but in his pleadings, there's not even a basic chronology set forth. There's no allegations. There were any communications whatsoever after the plea of guilty and prior to the letter exchange that they had in December. So this isn't a question where he simply failed to allege... He referred to a conversation or communication within that intervening period, and he simply wasn't detailed. There's no allegation whatsoever in this instance, and as this court has stated in the Chang decision and elsewhere, district courts have very broad discretion in terms of when they hold an evidentiary hearing and are under no obligation to do so if they reasonably determine that it would add little or nothing to the written submissions. Regarding the Flores-Orteg decision, it certainly is broad in terms of the duty to consult but Flores-Ortega did stop short of requiring a duty to consult in every single instance, and it also set forth factors that it said with the exact quote was highly relevant, or at least words that affect factors that are highly relevant to whether or not that duty to consult exists. One of those is whether there was a plea of guilty, which there was here. Another question is whether or not the defendant preserved any appeal rights, which the appellant here did not, given the fact that he did enter into a very broad appellate waiver provision, and another relevant factor is whether the defendant received the benefit of the bargain in the plea agreement. McAllister here received more than that benefit. He received 22 months below the guidelines range that he applied on top of what was already, I think, a highly favorable plea agreement when you consider that it allowed him to plead guilty to a lesser charge. So from Attorney Bianco's perspective, absent some other communication from her client, which was not alleged in this instance, she really didn't have any reason to believe at this time that he was anything but content with the outcome and no reason to believe that he had any interest in further pursuing this case. With that, Your Honors, no further questions. I'll rest at this time. Thank you very much. Thank you. Ms. Myers, you have two minutes of rebuttal. Thank you very much. I think counsel is simply wrong about some things that he is saying at this point. First of all, my client did not have unique knowledge of any of this because whatever knowledge he had, Ms. Bianco pretty much knew too unless, because it was all a course of communication. But why isn't your client able to simply say, or any defendant in his shoes, that I had a conversation before sentencing or before my client ran with my counsel? I mean, is that really too high a threshold to lay for a defendant? All this has to be looked in the light most favorable to the defendant. I'm not talking about the ultimate but this guy is a lay person. As shown on the record, he spent much of his life in jail and he doesn't have a clue or he has a clue or a wrong clue or no clue as to what is required really. I mean, to expect him to know that would be helpful if he had specific dates. I appreciate that point, Ms. Myers, but a slightly different question. If, suppose he did have the conversation that is equivalent to the one that takes place in writing after December the 3rd, why isn't that consultation? He says, I'm still bothered by this Townsend thing. She replies, but you see, you're wrong. If that, and then that's the end of it. If he doesn't then take the next step of saying, well, we have a disagreement here, I'd like another opinion, please file a notice of appeal and we'll work it out after that. If he did that, then there'd be no question it's the lawyer's obligation. But if he didn't do that after a discussion in which she tells him, I'm sorry, but you're just wrong on the law. You haven't got anything to appeal. And he says nothing, at least nothing about now you have to file a notice of consultation. I think that there is a, and I've looked at, you know, any number of cases that I have not cited, but I do not find anything that allows a consultation within the meaning of Supreme Court law to be anything other than direct stating these are your advantages, these are your disadvantages, and then to find out what the defendant wants. She didn't do that. She just said, okay, I think your points are not good or frivolous or whatever. But she didn't attempt to find out what he wanted to do. We did know that at some point they discussed pursuing an appeal or some sort of review proceeding. And we have no idea what the conversation was or what might've been said, what was said. We don't know enough at this point. All right. Thank you. Thank you very much. Thank you very much. We'll take the matter under advisement.